IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| CHRISTOPHER MCGINNIS, INDIVIDUALLY, AND BY NEXT FRIEND, BUFFY MCGINNIS, § § § § Plaintiffs § § VS. § § UNION PACIFIC RAILROAD CO., § § Defendant and Third-Party Plaintiff, § § § § METROPOLITAN TRANSIT AUTHORITY § OF HARRIS COUNTY, TEXAS, § § § Intervenor § § VS. § § LIBERTY MUTUAL FIRE INSURANCE § COMPANY AND THOSE CERTAIN § INDIVIDUAL UNDERWRITERS of § LLOYD'S LONDON, FORMING § SYNDICATE 1861 AND SYNDICATE § 2003 SUBSCRIBING SEVERALLY TO § POLICY NUMBER 576/UF7273700 FOR § THE 2003 LLOYD'S YEAR OF § ACCOUNT, § § Third-Party Defendants § | CIVIL ACTION NO. 3:07-CV-32 |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS FOR RECONSIDERATION**

On March 16, 2009, the Court's Memorandum and Order was issued. (Docket Entry ("Doc.") No. 96). Thereafter, the parties requested reconsideration of the Court's Memorandum and Order. Before the Court are the Motions for Reconsideration filed by

Third-Party Defendants Liberty Mutual Fire Insurance Company ("Liberty Mutual") (Doc. No. 105) and Underwriters of Lloyd's, London ("Lloyd's") (Doc. No. 106), as well as Defendant/Third-Party Plaintiff Union Pacific ("UP") (Doc. No. 107), and the responses, and replies thereto. A hearing was held on June 23, 2009, and all parties attended and participated. Following the hearing, additional documentation and evidence were submitted for the Court's consideration. (Doc. Nos. 119-123, 125 & 128). After considering the Motions, all related responses and replies, the arguments of the parties at the hearing, the additional evidence submitted, and the relevant law, the Court finds that the Motions (Doc. Nos. 105, 106 & 107) should be granted in part and denied in part as set forth herein.

## I. MOTION FOR RECONSIDERATION

### A. Applicable Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Sheperd v. International Paper Co.*, 372 F.3d 326, 328 n. 1(5th Cir. 2004). Reconsideration motions are generally analyzed under the standards for motions to alter or amend judgment under Rule 59(e) or motions for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998). If a motion for reconsideration is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion. *Id.* In the instant case, the parties' requests were filed more than ten days after the

court's order was entered and, therefore, must be considered a request for reconsideration under Rule 60(b).[1]

A motion to reconsider an order is reviewed using the standards established for a motion under Rule 60(b) of the Federal Rules of Civil Procedure. Such motions set a high threshold and call into question the legal correctness of a judgment or order. Granting a motion to reconsider is an extraordinary remedy that should be used sparingly and denial of such motions is favored. A motion for reconsideration "must clearly establish a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued . . . Relief is also appropriate when there has been an intervening change in the controlling law." *Kellogg Brown & Root International, Inc. v. Altanmia Commercial Marketing Co. W.L.L.*, 2009 WL 514054, *16 (S.D. Tex. 2009). Repeating the same arguments made to the Court before its entry of the Opinion and Order does not normally satisfy the burden required for reconsideration. *Id.* at * 25.

---

[1] The Court issued its Memorandum and Opinion on March 16, 2009. On March 31, 2009, the parties filed an "Agreed Request for Status Conference" (Doc. No. 98) in which they suggested several topics for discussion that included motions for reconsideration/clarification of certain aspects of the Memorandum and Order of March 16, 2009. A hearing was held on April 3, 2009. Pursuant to the deadlines outlined during the hearing, the parties filed their respective motions for reconsideration on April 17, 2009. (Doc. Nos. 105, 106 & 107). Even to the extent the Court considers the parties' "Agreed Request for Status Conference" as the date the motion to reconsideration was filed, it would not be within the ten (10) day time frame for purposes of Rule 59(e).

### B. Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure sets out five specific bases for granting relief from a final judgment, order, or proceeding: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct of an adverse party; (4) the judgment is void; and (5) satisfaction, discharge, or release of the judgment. FED. R. CIV. P. 60(b)(1-5). In addition, Rule 60(b)(6) provides that a court may relieve a party from a final judgment, order, or proceeding for "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b)(6). Relief under Rule 60(b)(6) is only granted when it is not covered by the five enumerated grounds and when "extraordinary circumstances" are presented. *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir.1995). "The district court enjoys considerable discretion when determining whether the movant has satisfied any of these Rule 60(b) standards." *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir.1991).

## II. ANALYSIS

The Court is of the opinion that the only issue warranting further consideration is the insurance carriers' argument that this Court lacks jurisdiction over the claims either brought by or against Metropolitan Transit Authority of Harris County, Texas ("Metro") due to a lack of standing and because Metro's claims are not ripe for adjudication.

Subject matter jurisdiction is essential to the authority of a court to decide a case. Article III of the Constitution imposes a limitation of the judicial power to "cases" and

"controversies." U.S. CONST. art. III, § 2; *see also, Sierra Club v. Morton*, 405 U.S. 727, 731 (1972). A prerequisite to the exercise of federal jurisdiction is that "a case or controversy must be ripe for decision, meaning that it must not be premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). Also implicit in the concept of subject matter jurisdiction is standing. *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997). A lack of either ripeness or standing deprives a court of jurisdiction. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (lack of ripeness); *Carr v. Alta Verde Indus.*, 931 F.2d 1055, 1061 (5th Cir.1991) (lack of standing). Subject matter jurisdiction cannot be waived by the parties and may be raised for the first time on appeal. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Ziegler v. Champion Mort. Co.*, 913 F.2d 228, 229 (5th Cir. 1990). Further, a suit for declaratory relief, "while allowing a party to anticipate a suit and seek judicial resolution," is merely a procedural device for deciding cases already within a court's jurisdiction and, as such, a party must still satisfy these jurisdictional prerequisites. *Shields*, 289 F.3d at 835; *see also, Orix Credit Alliance Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

In their motions for reconsideration, the insurers maintain that any claims brought by Metro under either the Wrap-Up or the Umbrella policy are not yet ripe because Metro's legal liability to UP has not been established; thus, the Court lacks jurisdiction regarding Metro's claims. (Doc. No. 105 at 14; Doc. No. 106 at 5). The Court must agree with the insurers. Insurance policies, such as the ones at issue, provide a duty to defend and a duty

5

to indemnify. Significantly, having never been sued by anyone, Metro does not rely on the duty to defend provided under either the Wrap-Up or the Umbrella policy. Instead, the issue is whether Metro has established its entitlement to policy proceeds under the duty to indemnify. Under either the provisions of the Wrap-Up Policy or the Umbrella policy, Metro must be "legally obligated to pay" as a prerequisite to indemnification. Texas law provides that the "[t]he duty to indemnify only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex.App.–Fort Worth 2001, no writ); *see also*, *Ohio Cas. Ins. Co. v. Time Warner Entertainment Co.*, 244 S.W.3d 885, 890 (Tex.App.–Dallas 2008, writ denied (2009)). As acknowledged by Lloyd's, while "a settlement (as well as a judgment) can also result in an obligation to pay under the policy," this has not occurred because Metro has not "settled any claims with any party." (Doc. No. 106 at 5). Insofar as Metro's legal liability to UP has not yet been established, any claim for indemnity it may have under either the Wrap-Up Policy or the Umbrella Policy is not yet ripe for adjudication and, therefore, must be dismissed. *Mid Continent Cas. Co. v. Harvest Petroleum, Inc.*, No. 7:07-CV-121, 2009 WL 2575983, at *2 (N.D. Tex. Aug. 20, 2009).

Metro argues that it should not have to pay in advance and, under the indemnity provisions, the insurers' legal obligation to pay should have been triggered once UP paid the claims against it and then asserted its right to repayment against Metro. However, Metro refers the Court to no persuasive authority in support of its argument. Moreover, Metro's

argument runs contrary to the law which, despite a claim of contractual indemnity, requires that an insured's liability to the third party be first determined by judgment or settlement.[2] *Time Warner Entertainment Co.*, 244 S.W.3d at 889.

In addition, in its Motion for Reconsideration, Lloyd's maintains that Metro's failure to comply with the "no action" clause of the policy triggers an issue of standing which divests the Court of jurisdiction over the claims brought against Metro. A "no action" clause is also contained in Liberty Mutual's Wrap-Up policy, thus, considering that the language of their clause is substantially the same as the one found in the Lloyd's Umbrella policy (Doc. No. 64-6 at pp. 14-15 of 25), the Court is of the opinion that any determination regarding jurisdiction would apply with equal force to Liberty Mutual. *See Thompson v. Betts*, 754 F.2d 1243, 1245 (5th Cir. 1985) (a court is entitled to examine the basis of its jurisdiction *sua sponte*). The Umbrella Policy contains a "no action" clause which provides:

> VI. Conditions
>
> \* \* \*
>
> 4. Legal Action Against Us
>
> There will be no right of action against us under this insurance unless:
>
> 1. You have complied with all the terms of this policy; and
>
> 2. The amount you owe has been determined with our consent or by actual trial and final judgment.

---

[2] UP settled the claims against it, but there has never been a settlement or judgment as to Metro.

(Doc. No. 66, Ex. B at Bates UW/Wil 20). "These clauses provide that no action will lie against an insurer until its insured's obligation to pay has been fixed by judgment or by an agreement that includes the insured, the insurer, and the claimant." *Time Warner Entertainment Co.*, 244 S.W.3d at 888. As such, the no action clause is a condition precedent to coverage. *Motiva Enterprises, L.L.C. v. St. Paul Fire & Marine Ins. Co.*, 457 F.3d 459, 460 (5th Cir. 2006). As a condition precedent, courts have construed compliance with the no action clause as a matter of standing. *Time Warner Entertainment Co.*, 244 S.W.3d at 889 (citing *Sun Oil Co. v. Employers Cas. Co.*, 550 S.W.2d 348, 349 (Tex.Civ.App.–Dallas 1977, no writ)).

Lloyd's acknowledges that the parties improperly conflated the claims of UP and Metro in their earlier briefing and Lloyd's now attempts to show that, because the claims of UP and Metro are analytically distinct, the Court erred in determining that, in addition to UP, Metro was also excused from complying with the "no action" clause. (Doc. No. 106 at 2). In its Motion for Reconsideration, Lloyd's explains that, in addition to any direct or first-party claims UP may be asserting under the policy, the parties are seeking coverage under the Umbrella Policy for Metro's contractual indemnity obligation to UP which arises out of a third-party claim. With regard to the third-party claims against Metro, Lloyd's points out that "Metro—unlike UP—has not settled any claims with any party ... Metro had not been sued," thus, Lloyd's could not have breached any duty to defend Metro." (Doc. No. 106 at 2-3). Lloyd's then argues that, because the requirements of the "no action" clause have

neither been met, or waived, there is no standing to bring an action against Lloyd's under the Umbrella policy for a third-party claim against Metro. (Doc. No. 106 at 5-6). On this point, the Court must agree.

As urged by Lloyd's, the no-action clause in the policy is a condition precedent and has not been satisfied because there was no settlement involving Metro, which obviated the issue of Lloyd's consent, and because there was no action against Metro in which its liability was determined by "actual trial or final judgment." Thus, UP, as a third party claimant,[3] cannot bring this action against Lloyd's on the Umbrella Policy based on Metro's yet, if ever, to be determined liability. (Doc. No. 106 at 3). Of course, while it is true that an exception exists when the insurer refuses to defend the insured,[4] the exception has no application to Metro because it was never sued. (Doc. No. 106 at 3-4).

Metro attempts to counter Lloyd's arguments, but its arguments are unavailing. Specifically, Metro contends that Lloyd's was placed on notice of UP's demand for contractual indemnity from Metro, had an opportunity to settle the claim, unequivocally denied liability coverage under the policy, yet, having denied coverage, now insists that Metro failed to comply with the "no action" clause of the Umbrella Policy. (Doc. No. 108

---

[3] The Court distinguishes between the first-party rights of UP under the policy, against which a waiver of the clause was established, and UP's third-party rights to recover through Metro, against which UP would have no greater rights than Metro under the policy. *Time Warner Entertainment Co.*, 244 S.W.3d at 889; *Sun Oil Co. v. Employers Cas. Co.*, 550 S.W.2d 348, 349-50 (Tex.App.–Dallas 1977, no writ); *see also Feria v. CU Lloyd's of Texas*, 2001 WL 1263666 *2 (Tex.App.–Dallas 2001, no writ).

[4] The only exception recognized to this rule is when the insurer denies a defense to the insured. *Gulf Ins. Co. v. Parker Products Inc.*, 498 S.W.2d 676, 679 (Tex. 1973); *Great American Indem. Co. v. Corpus Christi*, 192 S.W.2d 917, 919 (Tex.Civ.App.–San Antonio 1946, writ ref'd n.r.e.).

at pp. 6-7). In the same vein, Metro argues that one of the cases relied upon by Lloyd's, *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004), is distinguishable because, unlike the facts in *Northfield*, here the insurer completely denied coverage. Finally, Metro points out that both Lloyd's and Liberty Mutual had exercised the right to seek declaratory judgment in state court and it should be afforded the same right. The inherent flaw in Metro's arguments, however, is that the "no action" clause is a condition precedent to coverage under the policy and the law recognizes a waiver of the "no action" clause *only* when there has been a denial of the duty to defend, not simply a request for coverage. In this case, there is simply no dispute that Metro, having not been sued, was not denied a defense under either the Wrap-Up or the Umbrella policy. Therefore, as to Metro, the law will not recognize a waiver of the "no action" clause.

For all the reasons discussed, the Court is of the opinion that the insurers' motions for reconsideration are meritorious under Rule 60(b) based on the Court's lack of jurisdiction over the claims brought by or against Metro. The Court, therefore, concludes that Liberty Mutual and Lloyd's Motions for Reconsideration of their Motions for Summary Judgment against Metro (Doc. Nos. 64 & 66) should be granted only insofar as they seek dismissal of Metro's non-justiciable claims. The Court voices no opinion as to whether Metro should, hereinafter, be joined as a responsible third party in this action.

Accordingly, it is **ORDERED, ADJUDGED, AND DECREED** that Liberty Mutual and Lloyd's Motions for Reconsideration (Doc. Nos. 105, 106) are **GRANTED** only as to

the claims brought by or against Metro; that Metro's claims against Liberty Mutual on the Wrap-Up Policy and Lloyd's on the Umbrella Policy are **DISMISSED** without prejudice; and that the Motions for Reconsideration (Doc. Nos. 105, 106, 107) are **DENIED** on all other grounds.

**IT IS SO ORDERED.**

SIGNED this _____ day of September, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT